UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FOREST RIVER, INC.,

            Plaintiff,

    v.                            CAUSE NO. 3:21-CV-645 DRL

INTECH TRAILERS, INC.,

            Defendant.

<u>AMENDED OPINION AND ORDER</u>

Forest River, Inc. sells a travel trailer under the brand name "Della Terra." Its mark includes the name and a mountain profile design. inTech Trailers, Inc. sells a travel trailer under the brand name "Terra" that shares a mountain profile design on its trailer. Forest River sues inTech for federal and state trademark infringement and unfair competition. The company today requests summary judgment on certain claims[1] and one inTech defense. The court grants the motion only in part.

BACKGROUND

Lisa Rees formed East-to-West & North-to-South, Inc. (E2W) in 2017 [ECF 69-1 ¶ 4]. E2W began internally using the name "Della Terra" for a prototype trailer at E2W in late 2017 [ECF 69-2 at 44-45]. Ms. Rees began showing prospective customers prototypes of the trailer at that time [*id.* 39]. This prototype displayed the E2W brand with a mountain design [*id.* 44]. Though Ms. Rees says that she didn't offer to sell products at that time and only sought "feedback on how [she] was doing and if it matched the market," dealers began placing orders for the Della Terra during this same time [*id.* 42, 49].

inTech featured a poster at an Open House RV trade show in Elkhart, Indiana in September 2017 [*see* 81-15 at 111, 13 (Ex. 10)]. This poster said, "We're growing!!" and featured three silhouettes of travel

---

[1] Forest River curiously labels its motion "partial," though it moves for summary judgment on all four claims in the amended complaint.

trailers [*id.* 13 (Tuttle Ex. 10)]. One silhouette overlaid the word "Luna," whereas the second featured "Sol," and the third used "Terra" [*id.*]. One dealer testified that he saw the poster at the show [ECF 81-12 at 39], and another said he believed he saw it at a trade show in Louisville, though he could not recall when [ECF 81-14 at 40].

According to Ms. Rees, E2W began selling Della Terra trailers with a mountain design, at latest by March 30, 2018 [ECF 69-1 ¶ 6; *see also id.* 8-30 (FR0515-FR0371)]. That spring, E2W began promoting the Della Terra trailer on social media and other platforms, though the posts did not feature the name "Della Terra" on the trailer [*see* ECF 69-3 at 10 (FR0171), 13 (FR0174)]. E2W used Sharpline Converting, Inc. to create a stylized font for the name "Della Terra" and the mountain design [ECF 69-1 ¶ 7].

On July 1, 2018, Forest River purchased substantially all of E2W's assets, "whether personal, tangible, intangible, or mixed" [ECF 71-2 at Art. 1 § 1.1 (FR0519)]. This included trademarks [*id.* Sch. 1.1(f)(1) (FR0528)].[2] E2W became a division of Forest River, and Ms. Rees served as the division's general manager [ECF 69-1 ¶ 8]. Forest River continued to use the Della Terra script and mountain design on trailers manufactured in Elkhart, Indiana [*id.*]. For instance, a YouTube video on August 2, 2018 promoted the Della Terra trailer, with only the mountain design and E2W logo on the front of the trailer, though the Della Terra script appeared in a graphic at the bottom of the video. *See* ForestRiverInc, *2019 East To West RV Della Terra Travel Trailer*, YouTube (Aug. 2, 2018).[3] Forest River sold "dozens" of Della Terra trailers by the end of 2018 [ECF 69-1 ¶ 10].

---

[2] inTech argues in response to the statement of material facts (though not in brief) that this purchase did not transfer valid trademark rights in the Della Terra mark to Forest River because E2W had not used the mark on a good as defined by Ind. Code § 24-2-1-2(11). This argument fails from the start because E2W used the Della Terra mark in the trailer's advertisements, as inTech concedes. *See* Ind. Code § 24-2-1-2(11)(A)(i) ("use" includes placing the mark "in any manner on the good, a container for the good, a display associated with the good, or a tag or label affixed to the good").

[3] Available at https://www.youtube.com/watch?v =LHG2qnwn13Q.

Forest River continued to promote the Della Terra trailer through brochures, online advertising, social media, and magazines [ECF 69-1 ¶ 12]. At some point, Forest River placed the Della Terra mark, the mountain design, and the E2W logo all on the front of the trailer [*id.* 50 (FR0194) (showing these marks on the trailer on October 14, 2020)]. The Della Terra product line became the bestselling product line in the E2W division [ECF 69-6 at 164]. Today registered owners of Della Terra trailers reside in nearly every state in the United States and nearly every territory in Canada [ECF 69-8 at 6-7].

inTech announced to the retail public its Terra trailer on November 19, 2020 [ECF 69-15 at 33 (Ex. 13)]. The Terra trailer also features a mountain design in conjunction with the Terra mark [ECF 69-3 at 67 (Ex. J)]. The name and mountain design appears on the side of the Terra trailer, with inTech's name on a front plate [*id.* 67, 80]. No Terra mark or mountain design appeared on any physical prototypes until the 2020 launch [ECF 71 at 136]. The same company—indeed the same Sharpline representative—that designed Forest River's marks also designed inTech's marks, though he says he did not work on inTech's marks until 2020 [ECF 69-5 at 15].

On December 4, 2020, Forest River sent inTech a letter recalling its ownership of the Della Terra trademark [ECF 69-15 at 17 (Ex. 4)]. This letter responded to inTech's announced product line of Terra trailers [*id.*]. The letter demanded the immediate removal of the Terra name from inTech's products [*id.* 18]. Despite the demand, inTech shipped its first Terra trailer to a dealer on December 18, 2020 [ECF 81-16 at 49].

Forest River registered the Della Terra mark with the State of Indiana on August 18, 2021 [ECF 25-1]. Its registration identified the date of first use as March 30, 2018. On August 24, Forest River registered the mountain design with the State of Indiana, identifying a date of first use as April 23, 2018 [ECF 25-2]. Forest River applied for registration of the Della Terra mark with the United States Patent and Trademark office on August 13, 2021 [ECF 69-3 at 97 (Ex. N)]. inTech opposed this registration on July 28, 2022 [ECF 69-3 at 106 (Ex. O)]. Forest River registered the mountain design with the United

3

States Patent and Trademark Office on October 5, 2021 [ECF 25-3]. With both parties standing their ground on their use of their respective marks, this suit followed.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011). A triable issue precludes summary judgment. *See id.*

DISCUSSION

"Congress passed the Lanham Act in 1946 to 'federalize' existing common law protection of trademarks used in interstate commerce." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001). The Lanham Act "established a federal right of action for trademark infringement to protect both consumer confidence in the quality and source of goods and businesses' goodwill in their products." *Phoenix Ent., LLC v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016).

The Lanham Act prohibits, without the consent of the mark's registrant, the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). "The term 'trademark' includes any word, name, symbol, or device, or any combination thereof—(1) used by a person, or (2) which a person has intention to use in commerce and applies to register on the principal register established by" the Lanham Act. 15 U.S.C. § 1127.

The Indiana Trademark Act likewise prohibits the unconsented use of a "reproduction, counterfeit, copy, or colorable imitation of a [registrant's] mark." Ind. Code § 24-2-1-13(1). This prohibits use "in connection with the sale, offering for sale, distribution, or advertising of goods or services" or "on or in connection with which the use is likely to cause confusion or mistake, or result in deception regarding the source of origin of the goods or services." Ind. Code §§ 24-2-1-13(1)(A), (1)(B).

"The Indiana Trademark Act is similar, and in some respects identical, to the Lanham Act." *Serenity Springs v. LaPorte Cnty. Convention & Visitors Bureau*, 986 N.E.2d 314, 323 (Ind. Ct. App. 2013). Though state trademark law might be called "relatively undeveloped," *see id.*, the Indiana Trademark Act is meant "to provide a system of state trademark registration and protection that is consistent with the federal system of trademark registration and protection under the Trademark Act of 1946." Ind. Code § 24-2-1-0.5. The Lanham Act and Indiana Trademark Act function consistently unless "the language of the state legislation departs significantly from its federal counterpart." *Serenity Springs*, 986 N.E.2d at 325. Thus, a "judicial or an administrative interpretation of a provision of the [Lanham Act] may be considered as persuasive authority in construing a provision of" the Indiana Trademark Act. *Id.* at 323.

In addition to outlawing trademark infringement, the Lanham Act also protects against unfair competition—when a person uses in connection with any goods or services "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading

description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). Indiana law likewise recognizes an unfair competition claim that includes, as it relates to trademarks, "the palming off of one's goods or services as that of someone else." *Panther Brands, LLC v. Indy Racing League, LLC*, 126 N.E.3d 898, 908 (Ind. Ct. App. 2019).

Like trademark infringement, federal and Indiana unfair competition claims based on trademarks are analyzed the same. *See Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 700 n.4 (7th Cir. 2014); *Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F. Supp.2d 1015, 1040 (N.D. Ind. 2012). Thus to prevail on either trademark infringement or unfair competition claims, Forest River must show "(1) that [its] mark is protectable, and (2) that the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 & n.8 (7th Cir. 2001).

A. *Protectable Interest.*

When registered, a mark is presumed protectable. *See CAE*, 267 F.3d at 677 n.11. Registration of trademarks provides "nationwide constructive notice of [the registrant's] rights to the underlying marks, dating back to the filing dates of the applications." *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 603 (7th Cir. 2008); *see also* 15 U.S.C. § 1057(c) ("the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration against any other person"). This is a rebuttable presumption—for it is a "bedrock principle of trademark law that trademark ownership is not acquired by federal or state registration, but rather from prior appropriation and actual use in the market." *S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016) (quotations omitted).

"The party who first appropriates the mark through use, and for whom the mark serves as a designation of source, acquires superior rights to it." *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d

427, 434 (7th Cir. 1999). The "use must pertain to the sale of goods or provision of services." *Specht v. Google Inc.*, 747 F.3d 929, 934 (7th Cir. 2014). A "mark shall be deemed to be in use in commerce—(1) on goods when—(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce." 15 U.S.C. § 1127; *see also* Ind. Code § 24-2-1-2(11); *Cent. Mfg. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007). A "party may acquire a protectable right in a trademark only through use of the mark in connection with its product." *Blastoff*, 188 F.3d at 433.

The use must be "uninterrupted and continuous." *Specht*, 747 F.3d at 935 (citing *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1265 (5th Cir. 1975) ("even a single use in trade may sustain trademark rights if followed by continuous commercial utilization")). In contrast to this requisite degree of use, for example, "handing out two business cards at social events is not a bona fide use in commerce of [a] mark. . . . [It is] a mere token use of the mark that does not demonstrate a bona fide use in commerce." *Specht v. Google Inc.*, 758 F. Supp.2d 570, 579 (N.D. Ill. 2010).

"Evidence of actual sales is not necessary to establish ownership." *S.C. Johnson*, 835 F.3d at 666. "A wide variety of sources may demonstrate 'use' sufficient for public identification of a mark, including advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications, as well as in media outlets such as television and radio." *Id.* (quotations omitted). "It is enough . . . if the article with the adopted brand upon it is actually a vendible article in the market, with intent by the proprietor to continue its production and sale. It is not essential that its use has been long continued, or that the article should be widely known, or should have attained great reputation." *Id.* In short, "one must win the race to the marketplace to establish exclusive use of the mark." *ZAZU Designs v. L'Oreal S.A.*, 979 F.2d 499, 503 (7th Cir. 1992).

The question today is whether a reasonable jury could find that Forest River lacks a protectable interest in its Della Terra and mountain design marks. Forest River argues that it is the first user, creating just such a protectable interest. Forest River contends that it began selling Della Terra trailers with the mountain design in 2018—well before inTech built a physical prototype bearing the Terra mark and mountain design in 2020. inTech argues that it became the first user by announcing its Terra line at a trade show in September 2017. Forest River's application for federal registration occurred on August 13, 2021, and state registration on August 24, 2021; but the first use will control for these marks, as both parties have submitted dates of first use before 2021. *See WMS Gaming*, 542 F.3d at 603.

For the Terra mark, inTech says it displayed a poster with this brand name at an Open House RV trade show in Elkhart, Indiana in September 2017. This poster says, "We're growing!!" and "Coming Spring of 2018." The poster features three silhouettes of trailers—one featuring the word "Luna," another featuring "Sol," and the third featuring "Terra." One dealer testified that he saw the poster, and another dealer thought he had. Of note, the mountain design did not appear on this poster.

inTech's director of sales (Keith Fishburn) testified that he believed dealers purchased the Luna in 2017 "because of the upcoming Sol and Terra" [ECF 81-10 at 234]. He could not recall any conversation with a dealer about that subject though [*id.* 239-40]. inTech's chief executive officer (Adam Maxwell) testified that the company had been "continuously selling the Terra brand of RVs" to its dealer network "since [it] launched it in 20—end of 2019" [ECF 81-16 at Tr. 31]. He added that the company had been promoting it, with it being available "in ways," since 2017 [*id.*]. One dealer, who testified that he saw the poster at the trade show, said he is always interested in working with a manufacturer that plans to expand its line [ECF 81-12 at 43-44]. Another dealer testified that he purchased the Luna from inTech in anticipation of future products, though he cannot recall when he heard of Terra [ECF 81-13 at 30-31].

This single poster at a trade show in 2017 isn't enough to establish prior use of "Terra" for a reasonable jury. It was a mere token display. There was no actual "vendible article in the market" then,

*S.C. Johnson*, 835 F.3d at 666, and on this record nothing continuous followed by way of public use until 2020. A physical prototype of inTech's Terra trailer with the Terra mark and mountain design would not come until 2020, and inTech offers no promotional materials, advertisements, brochures, or other uses of the Terra mark between 2017 and 2020 for a reasonable jury to find prior ownership. Perhaps the announcement of a new line of trailers triggered some sales of the Luna in 2017, but a single showing of the Terra mark in 2017 that apparently went into hibernation until 2020 without its affiliated product vendible in commerce isn't a use that establishes ownership rights in the mark. *See Specht*, 747 F.3d at 935.

As to the Della Terra mark, inTech admits that sometime in 2018, Forest River began to sell RV trailers under this brand name. inTech hasn't challenged Forest River's continuous use of the Della Terra mark from 2018 forward. inTech only argues that the name wasn't put on a trailer until sometime after the 2019 model year. But a mark may be "placed in any manner on the goods or their containers *or the displays associated* therewith or on the tags or labels affixed thereto." 15 U.S.C. § 1127(1)(A) (emphasis added); *see also* Ind. Code § 24-2-1-2(11)(A)(i). Promotional materials show the Della Terra mark in use in advertising with the trailer in 2018. And the Della Terra brand name (and mountain design mark) on the trailer appeared on October 14, 2020—before inTech's public launch of the Terra line in November 2020. No reasonable jury could find that inTech used the Terra trademark before Forest River used the Della Terra trademark.

inTech has not argued when it first started using its mountain design; and, on this record, a reasonable jury could not say it was before the company's public launch in 2020 because the 2017 poster features no mountain design. By contrast, Forest River presents evidence that it began using its mountain design on its Della Terra trailer in 2018. Forest River thus has conclusively established first use of this mountain design mark.

That said, inTech argues that Forest River's state registration of the Della Terra mark was procured through fraud because Forest River represented that the mark was in use on March 30, 2018.

Indiana Code § 24-2-1-14(a) requires a mark to be registered before its owner may sue for infringement. The court may cancel a registration when a mark has been granted improperly or obtained fraudulently. Ind. Code §§ 24-2-1-10(3)(C), (3)(D). The argument for fraud stumbles quickly. *See Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013) (elements of fraud). inTech bases its assertion of fraud on the fact that the Della Terra mark was not on the trailer until perhaps as late as November 2018, but state law allows the mark to be placed "in any manner on the good, a container for the good, a display associated with the good, or a tag or label affixed to the good," Ind. Code § 24-2-1-2(11)(A)(i), and inTech concedes the Della Terra mark was used in advertisements (displays) associated with the trailer in March 2018. inTech thus lacks the basis to argue that Forest River's Indiana registration should be cancelled.

inTech also asserts that the first user to a "Terra" mark may actually be Fleetwood RV—what the law calls a *jus tertii* defense—but inTech lacks standing to assert another company's rights under today's circumstances. *See, e.g., Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996); *Playboy Enters. v. Pub. Serv. Comm'n*, 906 F.2d 25, 36-37 (1st Cir. 1990). The court will "not typically allow a defendant in a trademark case to raise a *jus tertii* defense." *Lapinee Trade, Inc. v. Paleewong Trading Co.*, 687 F. Supp. 1262, 1264 (N.D. Ill. 1988); *see also Flotec, Inc. v. S. Rsch.*, 16 F. Supp.2d 992, 1011 (S.D. Ind. 1998) ("a defendant cannot defend a trademark infringement claim on the theory that the plaintiff's rights to the mark may be junior to the rights of some third person"). inTech has not argued that its use stands on the basis of Fleetwood's prior use—that is, by way of a license or other contractual arrangement. *See Lapinee*, 687 F. Supp. at 1264. This defense being unavailable to inTech, the record permits a reasonable jury to find only that Forest River was the first user of the Della Terra mark and mountain design, and that Forest River has a protectable interest.

B. *Likelihood of Confusion.*

Once a trademark owner establishes a protectable mark, seven factors govern whether the defendant's competing mark likely will cause confusion among consumers: "(1) the similarity between

the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of

concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's

mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product

as that of another." *Sorenson v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). This analysis is the

"keystone" of trademark infringement. *Id.* Forest River need not prove each factor or actual confusion

to prevail. *See Libman Co. v. Vining Indus.*, 69 F.3d 1360, 1365 (7th Cir. 1995). The "similarity of the marks,

the defendant's intent, and actual confusion" are simply the "most important" factors. *Uncommon, LLC*

*v. Spigen, Inc.*, 926 F.3d 409, 425 (7th Cir. 2019).

The court "must ask whether consumers, and specifically consumers who would use either

product, would be likely to attribute them to a single source." *Bd. of Regents of Univ. of Wis. Sys. v. Phx. Int'l*

*Software, Inc.*, 653 F.3d 448, 455 (7th Cir. 2011). The confusion must be more than possible—it must be

probable. *Sorensen*, 792 F.3d at 726. A "grant of summary judgment for [Forest River] constitutes a finding

that, even resolving all factual disputes in favor of [inTech], there is a likelihood of confusion as a matter

of law." *CAE*, 267 F.3d at 677. The court thus approaches this analysis with "great caution" because the

"ultimate conclusion on the likelihood of confusion is a finding of fact." *AHP Subsidiary Holding Co. v.*

*Stuart Hale Co.*, 1 F.3d 611, 616 (7th Cir. 1993). The "question of whether likelihood of confusion exists

may be resolved on summary judgment if the evidence is so one-sided that there can be no doubt about

how the question should be answered." *CAE*, 267 F.3d at 677 (quotations omitted).

1. *Similarity Between the Marks.*

When analyzing the similarity between two marks, the court makes the comparison "in light of

what happens in the marketplace and not merely by looking at the two marks side-by-side." *Sorensen*, 792

F.3d at 726; *see also Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1115-16 (7th Cir. 1997)

("The record shows that the parties do not place their respective renditions of the word 'Meridian' in

front of the public in a manner which would allow the general population to examine them and notice

subtle differences."). "[W]hen the relevant buyer class consists of dealers and ultimate consumers, the state of mind of dealers is important." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 294 (7th Cir. 1998) (court correct to consider the state of mind of dealers when the company sold products primarily through distributors), *overruled on other grounds*, *Traffix Devices v. Mktg. Displays*, 532 U.S. 23 (2001).

"The test is not whether the public would confuse the *marks*, but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected"—here, Forest River being that source. *Sorensen*, 792 F.3d at 726. "The mere fact that one mark brings another mark to mind is not sufficient to establish a likelihood of confusion as to the source of the product." *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000). The mark's use in conjunction with its corporate source lowers the likelihood of confusion. *See G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999-1000 (7th Cir. 1989).

Similar font and script evince similarity between marks. *See Uncommon*, 926 F.3d at 426 ("Both generally use dark-colored, sans-serif font"); *Porsche Cars N. Am., Inc. v Manny's Porshop, Inc.*, 972 F. Supp. 1128, 1131 (N.D. Ill. 1997) ("defendants' script is clearly similar to Porsche's federally registered trademarked script"). In addition, similar uses of the marks may support the likelihood of confusion. *See Uncommon*, 926 F.3d at 426 ("both use the mark alone and in combination with other modifiers"). The "appearance and placement" of similar marks can make them distinct. *Packman*, 267 F.3d at 643.

Forest River argues that the marks are "virtually identical." For the trailer names, the company highlights the similar root word "Terra" (Latin for "earth") and emphasizes the similarity of the fonts (*see* Figure 1 *infra*). For the mountain design, Forest River says both marks feature mountains with the same relative shape. Forest River also argues that both companies use their marks—Della Terra and Terra— in conjunction with their mountain designs, placing the mountain designs directly above the trailer names.

inTech counters that the marks are "substantially different." According to inTech, the differences lie in the mountain designs—Forest River's design featuring a winding road between two mountains over a crescent and differently shaded mountains, and inTech's design featuring three peaks, no road, no crescent base, and consistent shading. Additionally, inTech argues that its design is an "angular graphic pattern" whereas Forest River's design features "curved lines." inTech argues that the designs appear with their names—Della Terra and Terra—and the addition of the word "Della" creates distinction.



**Figure 1**
**Forest River vs. inTech Marks**

The marks are not "virtually identical." *CAE*, 267 F.3d at 678 (finding no issue of material fact because the marks were "indistinguishable"). The font and script are strikingly similar for the trailer names. The addition of "Della" in Forest River's trailer name offers some distinction that makes this factor less one-sided, though the names sound similar. *See Porsche*, 972 F. Supp. at 1131 ("defendants use the name 'Porsh,' which is pronounced identically with 'Porsche'"). As for the mountain designs, inTech's mark features some notable differences—shading, outline, missing road, and missing curved base. One might say inTech's design calls Forest River's design to mind, but these marks aren't so similar that they foreclose a reasonable jury from reaching a conclusion that this factor favors viewing them as different.

The court must analyze the similarity of the marks in light of what happens in the marketplace. *Meridian*, 128 F.3d at 1115. Forest River and inTech sell directly to RV dealers, so these dealers and their state of mind matters. *See Thomas*, 138 F.3d at 294. For the trailer name, inTech presents two dealers who testified that they are not confused in the market by RV brand names that share similar root words. For the mountain design, inTech presents an RV dealer who testified that he does not think of a mountain graphic as an identifier of E2W products and that no one comes into his shop asking for a "travel trailer

that has this mountain graphic on it" [ECF 81-13 at 55]. Another dealer referred to pictures of mountains as mere "decorations" on travel trailers [ECF 81-14 at 37]. He called a mountain graphic a "pretty common thing that I see on travel trailers . . . on countless campers" [*id.* 38, 64]. In fairness, this same dealer called "Terra" distinctive and said he could not recall the mountain design associated with the Della Terra [*id.* 64]. A third dealer named many RV companies he knew that used mountain designs on their units [ECF 81-12 at 39]. This testimony speaks to the perception of knowledgeable and experienced dealers in the industry, *see Thomas*, 138 F.3d at 294, and leaves a reasonable jury the option to weigh this factor against Forest River.

The appropriate market also includes the "reasonable and prudent consumer[]." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.* 149 F.3d 722, 729 (7th Cir. 1998). Similar root words or mountain logos, to the extent common in the RV industry, reduce the possibility that another mountain logo or otherwise similar root word would naturally be associated with Forest River in the consumer's mind. *See Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 219 (7th Cir. 1978) (a mark is "weak" when a mark is "very much like similar marks" in the industry). inTech also argues that its marketing of Terra with the Luna and Sol trailers gives "Terra" an astronomical-like meaning—because as a triad they refer to the Earth, moon, and sun—whereas the Della Terra isn't prone to this connotation. *See CFM Majestic, Inc. v. NHC, Inc.*, 93 F. Supp.2d 942, 951 (N.D. Ind. 2000) (similarity includes "meaning or connotation"). That the marks often appear alongside their corporate source—either E2W or inTech—in such places as the website, marketing, or other products tends to belie customer confusion. *See Heileman*, 873 F.2d at 999-1000. In sum, though the marks bear some similarity, they are not so similar to preclude a reasonable jury from finding for inTech, among all factors.

2. *Similarity of the Products*.

"The similarity between products focuses on whether the buying public thinks or expects the products to come from the same source." *Sullivan v. CBS Corp.*, 385 F.3d 772, 778 (7th Cir. 2004). Such

products are "[c]losely related." *CAE*, 267 F.3d at 679. That said, "dissimilarity is not dispositive of the likelihood of confusion inquiry" because a likelihood of confusion may exist even if the parties' "products and services are not identical." *Id.*

The court's "inquiry in comparing the two products is not whether they are interchangeable, but whether the parties' products are the kind the public might very well attribute to a single source." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 931 (7th Cir. 2008) (quotations omitted). This factor will weigh in the trademark owner's favor even if the products are "not identical" but "certainly cannot be considered as unrelated." *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1089 (7th Cir. 1988) ("it is entirely logical for a dog fancier to believe that a well-known kennel club engaged in various dog-related activities might market or sponsor 'pedigree' toy dogs representing 'officially sanctioned' breeds.").

Forest River argues that it and inTech sell the same product—travel trailers—that share basic similarities in height, weight towability, and other features to some of the same dealers. inTech responds that the trailers bear differences, one being an entry level trailer and the other being a specialty trailer. inTech also argues that the Terra bears a visually distinct "tilt forward" front end that it shares with other inTech trailers. inTech thus argues that experienced dealers could help consumers see the difference. Even accounting for inTech's arguments, that both companies sell travel trailers in the industry with materially similar features and purposes causes this factor to favor Forest River. *See AutoZone*, 543 F.3d at 931; *Kennel*, 846 F.2d at 1089.

3. *Area and Manner of Concurrent Use.*

For area and manner of concurrent use, the court considers "whether the parties use the same channels of commerce, target the same general audience, or use similar marketing procedures." *Sorensen*, 792 F.3d at 730. When an overlap exists, this factor will weigh in favor of a finding of likelihood of confusion. *CAE*, 267 F.3d at 681. Even a weak overlap in this area may support an inference in the trademark owner's favor. *See Sorensen*, 792 F.3d at 730.

inTech agrees with Forest River that the parties share a nationwide market. inTech also agrees that the parties sell through the same channels of trade—RV dealerships. inTech couches these facts as contra confusion because highly knowledgeable dealers can help consumers understand the differences between products. Though that point may be cogent in other areas of the confusion analysis, it has little bearing here. The law favors Forest River on this factor based on this overlap in channels of commerce. *See CAE*, 267 F.3d at 681.

4. *Degree of Care Exercised by Likely Consumers.*

In assessing the degree of care exercised by likely consumers, the court will generally "assume" that the "more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *Sorensen*, 792 F.3d at 730. When "the cost of the defendant's trademarked product is high, the courts assume that purchasers are likely to be more discriminating than they might otherwise be." *Maxim's, Ltd. v. Badonsky*, 772 F.2d 388, 393 (7th Cir. 1985); *see also AM Gen. Corp. v. Daimlerchrysler Corp.*, 311 F.3d 796, 828 (7th Cir. 2002) ("consumers who buy or lease a vehicle that sells for more than $ 16,000.00—or, in the case of the H2, more than $ 50,000.00—are likely to use a very high degree of care"); *Miyao Mach. USA, Inc. v. Miyanohitec Mach., Inc.*, 576 F. Supp.2d 868, 885 (N.D. Ill. 2008) ("MMU admits that its products are expensive, usually costing tens of thousands of dollars, and therefore purchasers are generally deliberative and sophisticated [though] the fact that consumers are sophisticated does not mean that there is no likelihood of confusion as a matter of law."); *Reed-Union Corp. v. Turtle Wax*, 869 F. Supp. 1304, 1310 (N.D. Ill. 1994) ("Purchasers of premium automobile appearance products will exercise some care and are less likely to be confused by similarities in the parties' mark[.]"). "When customers use a lesser degree of care, this supports a finding that there is a likelihood of confusion." *Sorensen*, 792 F.3d at 730. That said, consumers' "technical sophistication about their particular industry does not equate to trademark sophistication." *CAE*, 267

F.3d at 683. "[When] marks are identical, of course, sophistication as a factor in determining likelihood of confusion is less significant." *Maxim's*, 772 F.2d at 393.

Forest River cites a consumer survey in which certain respondents thought the Della Terra and trailers were affiliated. Forest River also offers testimony from dealers that some consumers enter the dealership having done no research into the products [ECF 81-14 at 31]. For this reason, Forest River argues that the standard of care should be analyzed through the lens of the least sophisticated consumer who does no research. Forest River's pitch for the "least sophisticated consumer" doesn't mean that customer shouldn't be a "reasonable and prudent consumer[]." *Platinum*, 149 F.3d at 729; *see also Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 293 (3d Cir. 1991) ("When a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class."). It just means that in this mixed class of dealers and consumers, the court will look at the degree of care exercised by the reasonable and prudent consumer.

inTech highlights the high cost of travel trailers. Forest River's suggested retail price (MSRP) for Della Terra trailers ranges from $23,568.30 to $55,521.95 [ECF 69-8 ¶ 5]. The MSRP for the Terra is $68,950 [ECF 69-13 at 161]. The high cost of these trailers indicates that consumers will exercise greater care in deciding which manufacturer builds their unit. Few consumers will spend tens of thousands of dollars, albeit least sophisticated yet reasonable, without some research, marketing review, or discussions with salespersons. This is particularly true when as many as 50 percent of RV purchasers finance their deals, so they want their money to be well spent [ECF 69-14 at 104]. Under such circumstances, the likely consumer will not be as easily confused. Indeed, even one E2W salesperson remarked that RV consumers "do a lot of their own research[—like] a lot of their own research" [ECF 81-18 at 33]. And consumers often receive close assistance from their dealers to help differentiate products [ECF 81-13 at 44, 81-14 at 23-25]. This factor weighs against a likelihood of confusion.

5.  *The Mark's Strength.*

"The stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone*, 543 F.3d at 933. Typically, the mark's strength "corresponds to its economic and marketing strength." *Id.* "The ultimate concern in a trademark case like this one is the tendency of the mark to indicate the origin of the product in the eyes of the purchasing public." *Sullivan*, 385 F.3d at 777. "The crucial question is whether the mark is strong enough that the public will form an association between the mark and the source of that particular good." *Id.*

"Strength of trademarks is commonly conceptualized as a spectrum, with coined terms and arbitrary marks on the strong end, suggestive terms in the middle, and descriptive terms on the weak end." *Bernatello's Pizza, Inc. v. Hansen Foods, LLC*, 173 F. Supp.3d 790, 800 (W.D. Wis. 2016) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). "A mark that is strong because of its fame or its uniqueness is more likely to be associated in the public mind with a greater breadth of products or services than is a mark that is weak because it is very much like similar marks." *Telemed*, 588 F.2d at 219.

Forest River argues that its marks are at least suggestive and midgrade in strength. In support, the company cites the deposition of an opinion witness (David Franklyn) who calls Della Terra "a linguistically inherently distinctive mark and . . . strong" [ECF 69-11 at 26-27]. For the mountain design, Forest River cites E2W founder's testimony that the "mountains represent two different types of avenues, east and west, and the road between is the one that connects just the life with the RV adventure" [ECF 69-2 at 167]. Forest River adds that it has earned $100,000,000 in sales of the Della Terra over five years and spent over $300,000 in marketing [ECF 69-1 ¶ 10-11].

inTech concedes that the Della Terra mark is suggestive but challenges the strength of the mountain design given its ubiquity in the market and the unlikelihood that a consumer would associate any one mountain design with Forest River. inTech counters the evidence of sales by arguing that the sales weren't derived from the mountain design alone, as it also appears with the E2W logo. If anything,

inTech argues, the mountain design is stronger when combined with the E2W logo—giving that combined mark greater distinction from Terra and inTech's mountain design.

The combination of the mountain design with the E2W logo doesn't inherently make the mountain design weaker, though it may make confusion less likely. *See Heileman* 873 F.2d at 999-1000. But one RV dealer testified that he doesn't think of a mountain graphic as an identifier of E2W products and that no one comes into his shop asking for a "travel trailer that has this mountain graphic on it" [ECF 81-13 at 55]. Another dealer referred to pictures of mountains as mere "decorations" on travel trailers [ECF 81-14 at 37]. He called a mountain graphic a "pretty common thing that I see on travel trailers . . . on countless campers" [*id.* 38, 64]. This same dealer called "Terra" distinctive and said he couldn't recall the mountain design associated with the Della Terra [*id.* 64]. A third dealer named many RV companies he knew that used mountain designs on their units [ECF 81-12 at 39].

A jury thus would hear that Forest River has a Terra-variant brand that has a strong suggestive meaning, albeit one neither of the strongest kind and certainly not one of the weakest kind, and a mountain design not altogether distinctive based on the testimony of dealers in the market, despite the strong sales of Della Terra trailers. This factor thus presents an option for a reasonable jury to find that the factors favor Forest River but also allowance for the jury to find for inTech.

### 6. *Actual Confusion.*

Minimal evidence of actual confusion "does not necessarily establish a likelihood of consumer confusion." *Platinum*, 149 F.3d at 729. "[E]vidence of actual confusion must refer to the confusion of reasonable and prudent consumers, and not confusion among sophisticated members of the [travel trailer] industry." *Id.* "Actual confusion can be shown by either direct evidence or by survey evidence." *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1218 (7th Cir. 1997).

Forest River offers three reasons why this factor weighs in its favor. First, Forest River cites evidence of consumer confusion at a trade show. A Della Terra salesperson, Dylan Wynne, recalled a

couple walking up to him at a trade show in 2022 [ECF 81-18 at 82]. The gentleman "did not appear to be working for an RV dealer" [*id.*]. After Mr. Wynne told him that he worked with East to West Della Terra, the man asked if Mr. Wynne "worked with the inTech guys" [*id.* 84, 86]. The gentleman said, "You make the inTech" [*id.* 87]. As relayed in an email by Mr. Wynne four days later, the man commented that there "are so many [brands] that it is tough to keep up" [ECF 69-7 at 13 (FR_0402)].

"Initial interest confusion, which is actionable under the Lanham Act, occurs when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated." *Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002). "[T]hat [the] confusion as to the source of a product or service is eventually dispelled does not eliminate the trademark infringement [that] has already occurred*." Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 442 n.2 (7th Cir. 1990).

inTech argues that this man said nothing about being a customer and never referenced the trademarks—merely asking if Mr. Wynne sold the "inTech" or worked with inTech. A reasonable jury could view this evidence in either party's favor. There seems to be some confusion in this man's eyes, but it remains unknown whether he was even a consumer—and for now the court must take all reasonable inferences in inTech's favor. Add to this mix that this gentleman never referred to the Terra and ironically attributes the Della Terra to inTech—the inverse of Forest River's infringement case—and this anecdote alone does not compel summary judgment for Forest River.

Second, Forest River cites a spreadsheet report documenting 851 Google searches that included the term "Della" and resulted in a Terra ad popping up, and then showing eleven clicks on the Terra ad [ECF 69-3 at 87-95 (Ex. M)]. When a search engine delivers results for both parties' products, that does not mean that "the search engine was 'confused' as to the source of the sites." *Sullivan*, 385 F.3d at 779. "But those results just take [the court] back to the same point about confusion: would a consumer, looking at the different web-sites, think that [the Della Terra] and the [Terra] were somehow from the

same source?" *Id.* inTech argues that this is a small amount of diversion (1.3 percent) that may not even be attributable to customers.[4] Forest River also hasn't established that consumers were confused once they reached inTech's website. *See Sullivan*, 385 F.3d at 779. A jury could reasonably view this evidence, as presented on this record, as favoring either side, particularly when the court must take all reasonable inferences in inTech's favor at this stage.

Third, Forest River cites the results of a survey conducted by its trademark opinion witness, David J. Franklyn, a law professor at Arizona State University. Survey evidence must reflect a respondent's belief that the trademark owner is the source of the infringing mark. *See James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 279 (7th Cir. 1976) ("In the absence of contrary evidence [to a survey], therefore, it must be presumed that at least 15% of the restaurant-going public, upon seeing the accused sign, would mistakenly believe that Distiller is 'sponsoring or promoting' the restaurant identified by that sign."). Professor Franklyn was retained to assess the level of confusion with Forest River's Della Terra units [ECF 69-11 at Tr. 38]. He found that a "significant percentage of consumers (11%) are confused as to the relationship of the Della Terra and Terra models, with the overwhelming majority citing the similarities in name and logo" [*id.* 23 (Ex. 101, pg. 9)]. He testified that "the vast majority of the people who said yes [to confusion] tied their confusion to the brand name, and that's unusual in my experience in taking these types of surveys, to have this kind of clarity and persistent citing in their rationales to the same brand name" [*id.* Tr. 137]. He also said that "the rate of confusion is closer probably to 14 or 15 percent based on the strength and clarity of the answers" [*id.* 139].

---

[4] inTech notes that even Mr. Wynne testified that he often looks at the online ads of his competitors [ECF 81-18 at 32, 70-71].

inTech challenges the survey's credibility and weight. The company argues that its trademark opinion witness, Thomas Maronick, challenges the Franklyn survey's methodology.[5] Questions of credibility and weight aren't appropriate for summary judgment. *See Walker v. Sheahan*, 526 F.3d 973, 980 (7th Cir. 2008) ("credibility determinations are inappropriate on summary judgment"); *Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008) (with "dueling experts," the factfinder "decide[s] how to weigh the competing expert testimony"). The sole question is whether no reasonable jury could find for inTech in light of this survey and the totality of factors.

inTech attacks the survey's conditions—a fast-paced computer model. inTech argues that the real marketplace allows consumers to spend more time in research. That said, the respondents in Forest River's survey were not capped on time.

inTech also argues that the survey failed to reflect marketplace conditions because the comparisons obscured its name from the front of the Terra trailer [ECF 69-11 at 29 (Ex. 101, pg. 15)]. The name appears on the front plate in black print, but seems difficult to see as compared to other photos of inTech trailers [ECF 69-3 at 80 (Ex. C)]. Query whether consumers would more clearly see inTech's name on the trailer in the actual marketplace. By contrast, the E2W logo appears clearly [ECF 69-11 at 24 (Ex. 101, pg. 10)]. inTech also argues that the jury would see a significant hole in the survey's results— namely that it automatically excluded anyone who took less than one-third the median time to complete the survey [ECF 81-19 at 101]. Forest River counters that this is the standard practice of the survey collection agency that Professor Franklyn utilized.

To the extent a reasonable jury discredited the survey or found its measure of confusion to be lower because of these arguments, and a reasonable jury might, the record on this factor is so near the

---

[5] Forest River has moved to exclude Mr. Maronick under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The court need not resolve the motion to exclude today, as Mr. Maronick's potential exclusion would not change the court's ruling on summary judgment.

cusp of a fair inference against confusion that the court cannot say Forest River would prevail as a matter of law. *Compare Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 358 (7th Cir. 1983) (finding 7.6 percent confusion insufficient as a matter of law) *with Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 386 (7th Cir. 1976) (collecting cases featuring between 11.4 and 25 percent confusion rates as supporting an inference of confusion). That proves particularly true when the court accounts for all infringement factors on this record. As it concerns this particular factor, these arguments of weight and credibility must await the jury's determination. *See AHP*, 1 F.3d at 618 ("any shortcomings in the survey results go to the proper weight of the survey and should be evaluated by the trier of fact").

7. *Intent to Pass-Off.*

"Passing off" is "trying to get sales from a competitor by making consumers think that they are dealing with that competitor, when actually they are buying from the passer off." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 940 (7th Cir. 1986). It is a "type of fraud." *Heileman*, 873 F.2d at 1000. "Copying is not necessarily passing off." *Id.*

A showing of the defendant's "intent to promote itself as the source" of the mark, rather than passing its product off as coming from the trademark owner, weighs against the trademark owner's claim. *Packman*, 267 F.3d at 644 (display of defendant's company name along with the trademark slogan weighed against bad faith). A "clearly stated designation of origin" also weighs against intent to palm off. *Uncommon v. Spigen, Inc.* 305 F. Supp.3d 825, 863 (N.D. Ill. 2018). That said, the defendant's continued use of a mark after receiving a cease-and-desist letter, though alone not dispositive, may help indicate that the defendant intentionally copied the plaintiff's mark. *Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F. Supp.3d 891, 909 (N.D. Ill. 2019). "[E]vidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991).

Although not evidence of first use for a reasonable jury, inTech offers its poster display of the Terra mark in 2017 as evidence against its intent to pass off its product as that of Forest River. This poster draws this factor into a reasonable question—that is, when inTech initially acted. Thereafter, however, specifically December 2, 2020, Forest River sent a cease-and-desist letter—before inTech ever shipped a Terra unit [ECF 69-15 at 17-18 (Ex. 4)]. This letter responded to inTech's announced product line of Terra trailers and those Terra trailers with an Oasis floorplan. The letter demanded the immediate removal of Terra and Oasis names from inTech products.

inTech argues that the demand letter cannot be credited because Forest River falsely represented that it was still selling Oasis branded products. Forest River had not outwardly branded a product with the Oasis mark since 2019, though it continued to license trailers under the Oasis name [ECF 69-16 at 13, 16-17]. No matter the reference to the Oasis mark, the letter put inTech on notice about its potential infringement of Della Terra. Forest River had been selling the Della Terra for two years at that point.

Forest River also offers an email sent to inTech's marketing head (Steve Elkins) and promoted Forest River's Della Terra unit on August 28, 2018. inTech's chief executive officer testified that he was unsure whether this marketing director was employed by inTech at the time, but his speculation does not create a triable issue [ECF 69-15 at Tr. 28]. *See Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009); *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003). On this record, a reasonable jury could only credit that, more than two years before receiving a cease-and-desist letter, inTech was aware— and aware through its head of marketing—that Forest River had begun selling RV units with the Della Terra name.

Forest River also argues that inTech's counsel warned the company about the possibility of an infringement claim. When inTech received the cease-and-desist letter from Forest River, inTech's owner (Scott Tuttle) emailed its CEO (Adam Maxwell) that the company's counsel "warned us about that" [ECF 69-17 at 14 (Ex. 7)]. inTech says the email referred to a broader issue than infringement of Forest River's

trademarks—that as "[inTech] got out there more and became bigger, that there would be issues that [the company] would have at times with larger corporations looking to come in and push [it] out of [its] space or try to take some of [its] market share or try to get involved with [the company]" [ECF 69-15 at Tr. 23]. He said inTech "had no knowledge that Della Terra—that this might be a problem with Della Terra" [*id.* Tr. 25]. A jury might reasonably view this email in two different lights—one favoring Forest River's argument of intent or one favoring inTech's argument against bad faith, and disambiguating ambiguous statements is for the trier of fact. *See Shager v. Upjohn Co.,* 913 F.2d 398, 402 (7th Cir. 1990) ("task of disambiguating ambiguous utterances is for trial, not for summary judgment").

But Forest River neither needs this ambiguous email, nor the fact that the companies operate in close proximity to each other, at times with shared outside service providers—namely the same Sharpline representative who designed marks for both companies—to demonstrate that this factor, on this record, favors a claim of infringement. inTech offers no evidence to rebut this finding on this factor for a reasonable jury.

8. *Summation.*

In sum, the factors fall short of compelling summary judgment for Forest River as a matter of law. The record leaves more genuine factual questions for a reasonable jury than undisputed one-sided answers. Several of the factors could swing inTech's way, including two of the three most important factors—actual confusion and mark similarity, though the record materially favors Forest River on the intent to palm off. *See Uncommon,* 926 F.3d at 425. Confusion must not just be possible, but probable, *see Sorensen,* 792 F.3d at 726, and this isn't one of those cases in which the evidence is "so one-sided that there can be no doubt about how the question should be answered," *CAE,* 267 F.3d at 677. A reasonable jury could find for either Forest River or inTech, so there must be a trial.

C.  *Assumption of the Risk.*

Forest River argues for summary judgment on inTech's assumption of the risk defense because it proves unsupported by the record and unrecognized as a trademark infringement defense. inTech counters that this is a "bald, conclusory statement" that does not require a response.

Assumption of the risk traditionally has evolved in the tort context to describe instances in which a plaintiff voluntarily and unreasonably encounters a known risk (*e.g.*, running through an inflatable obstacle course at age 75) or expressly or impliedly consents to relieve a defendant of liability (*e.g.*, signing a consent and waiver for a risky sports activity)—and thereby negates a duty or breach element or, depending on the iteration, serves as an affirmative defense. *See, e.g., Spar v. Cha*, 907 N.E.2d 974, 980-81 (Ind. 2009); *see also Megenity v. Dunn*, 68 N.E.3d 1080, 1083-84 (Ind. 2017). It has no operation as a defense in a trademark infringement or unfair competition claim of the ilk here.

Through the court's own research, only one case appears to mention assumption of risk in a trademark infringement analysis, and then only in the context of assessing the strength of the trademark owner's mark:

> [T]he business judgment to settle on the familiar term entails its own risk-benefit calculus. The easy mark may offer the less costly, more rapid course to name recognition and identification of source. At the same time, the name selection entails an assumption of risk in two ways. First, in settling upon ordinary words the likelihood of duplication is greater. Second, the law places a heavier burden on trade reliance on the common term by extending less recognition and protection to inherently indistinctive marks precisely because of the probability that the public is less likely to be confused by them.

*See BigStar Ent., Inc. v. Next Big Star, Inc.*, 105 F. Supp.2d 185, 194 (S.D.N.Y. 2000). The court characterized this assumption of the risk with its common meaning, not as a term of art in the guise of an affirmative defense. To the extent that inTech wants to argue that Forest River assumed some risk by choosing less distinctive marks, thereby weakening its marks, inTech may do so at trial. This isn't an affirmative defense. The court grants summary judgment on this affirmative defense in Forest River's favor.

D. *Motion to Seal.*

"Because there is a strong presumption toward public disclosure of court files and documents, courts resolving such motions have placed the burden on the party seeking confidentiality to show good cause for keeping the documents from public view." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 566 (7th Cir. 2018). "[D]ispositive documents in any litigation enter the public record notwithstanding any earlier agreement." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002). "[V]ery few categories of documents are kept confidential once their bearing on the merits of a suit has been revealed." *Id.*

Forest River moves to seal four exhibits. inTech does not oppose the motion to seal for purposes of summary judgment only. One exhibit, marked confidential, appears to show a spreadsheet of trailer orders. The court did not rely on this exhibit in its ruling, so the court grants the request to seal ECF 71-1. The court likewise did not rely on profit and loss statements for E2W in 2018, so the court grants the request to seal ECF 71-3.

Forest River hasn't explained why it wants to seal certain testimony of inTech's director of sales (Keith Fishburn), outside the fact that it was designated "attorney's eyes only." The court relied on this testimony to establish that inTech did not put its marks on a physical prototype until 2020, and neither Forest River nor inTech offers good cause to seal this testimony in its entirety from the public record, so the court denies the request to seal this deposition. Forest River also asks the court to seal its asset purchase agreement with E2W [ECF 71-2]. Forest River says this document contains confidential trade secrets on how the company conducts its asset purchases. This document is heavily redacted, leaving only the portions the court relied on to conclude that Forest River acquired E2W's trademark rights. There is no additional reason to seal this document, so the court denies this request.

CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART Forest River's summary judgment motion [ECF 67], finding that Forest River has established an undisputed protectable interest in its Della Terra and mountain design marks, granting summary judgment on inTech's assumption defense, and otherwise denying summary judgment on the state and federal claims. The court GRANTS IN PART Forest River's motion to seal [ECF 70] and DIRECTS the clerk to seal ECF 71-1 and 71-3 and unseal the exhibits at ECF 71 and 71-2. The case will proceed to trial accordingly.

SO ORDERED.

October 20, 2023                                   *s/ Damon R. Leichty*
                                                   Judge, United States District Court