UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FOREST RIVER, INC., | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21-CV-645 DRL |
| INTECH TRAILERS, INC., | |
| Defendant. | |

OPINION AND ORDER

Forest River, Inc. seeks to exclude testimony of inTech Trailers, Inc.'s opinion witness, Dr. Thomas Maronick, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The court denies the motion, except only in part.

STANDARD

A witness may testify in the form of an expert opinion when (1) the witness is "qualified as an expert by knowledge, skill, expertise, training, or education;" (2) the testimony is "based on sufficient facts or data;" (3) the testimony is "the product of reliable principles and methods;" and (4) the witness has "reliably applied the principles and methods to the facts of the case" in such a way that the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Although analysis under Rule 702 remains at all times flexible, *Daubert*, 509 U.S. at 594, the fundamental considerations of what makes expert opinion admissible are well understood, *see Constructora Mi Casita, S de R.L. de C.V. v. NIBCO, Inc.*, 448 F. Supp.3d 965, 970-71 (N.D. Ind. 2020).

In short, the Federal Rules of Evidence strike a balance between two competing concerns: the apprehension for the free-for-all admission of unreliable theories that might baffle juries and a "stifling and repressive scientific orthodoxy" that might inhibit new truths or legitimate cases. *Daubert*, 509 U.S. at 596. While preserving that balance, the *Daubert* analysis is not a substitute for crossexamination,

contrary and compelling evidence, thoughtful jury instructions, and other methods inherent in federal trials to challenge shaky evidence. *Id.*; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013). Still, the proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

The court needn't conduct an evidentiary hearing here. No party has requested one. The briefing, proffered expert report, exhibits, and deposition testimony also permit the court to rule. *See, e.g., Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998); *Target Mkt. Pub., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143 n.3 (7th Cir. 1998).

DISCUSSION

The court recently ruled on a summary judgment motion that provides the background for this case. *See Forest River, Inc. v. inTech Trailers, Inc.*, 2023 U.S. Dist. LEXIS 164170 (N.D. Ind. Sept. 15, 2023) (amended Oct. 20, 2023). A triable issue remains as to whether inTech's use of its Terra and mountain design marks cause a likelihood of confusion with Forest River's Della Terra and mountain design marks.

Before the upcoming trial, Forest River wants to exclude Dr. Maronick's anticipated testimony. Dr. Maronick has been a marking consultant since 1997 [86-1 at 648-49 (Ex. 6 at 2)]. In this role, he has provided guidance on marketing strategy and consumer research issues in litigation, served as an expert witness in over 150 cases, and completed over 300 survey research projects for advertising and trademark litigation [*id.*]. He also served as the director of impact evaluation in the Bureau of Consumer Protection at the Federal Trade Commission from 1980-1997, where he was the FTC's in-house specialist on marketing and survey matters [*id.*]. He has published on the impact of marketing on consumers.

Dr. Maronick earned his doctorate in business administration from the University of Kentucky and his juris doctorate from the University of Baltimore School of Law [86-1 at 66 (Ex. 2 at 2)]. In addition to his professional work, he has taught at the collegiate level for 43 years. He was an instructor in business administration at Virginia Commonwealth University, associate professor of marketing at the

2

University of Baltimore School of Business, and professor of marketing at Towson University College of Business and Economics before assuming his current position as emeritus professor of marketing [86-1 at 648 (Ex. 6 at 1)]. No one really challenges his credentials, except as to the depth of experience with the recreational vehicle industry or its customers specifically, though apparently Forest River retained him between 2010 and 2012 to address consumer confusion in another trademark infringement suit.

If permitted, Dr. Maronick will opine that the consumer survey conducted by Forest River's opinion witness, Dr. David Franklyn, features several flaws that render his conclusions without merit [86-1 at 67 (expert report at 3)]. He will not offer an opinion about the likelihood of confusion. Forest River challenges the admissibility of Dr. Maronick's opinions on two grounds: he offers improper legal conclusions and his opinions rest on speculation devoid of facts and a reliable method.

### A.     *Legal Conclusions.*

Forest River first argues that Dr. Maronick offers inappropriate legal conclusions. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). For instance, "[e]xperts are permitted to testify regarding how their government agency applies rules as long as the testimony does not incorrectly state the law or opine on certain ultimate legal issues in the case." *United States v. Davis*, 471 F.3d 783, 789 (7th Cir. 2006). But "Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. . . . [Experts] cannot testify about legal issues on which the judge will instruct the jury." *United States v. Burge*, 711 F.3d 803, 813 n.5 (7th Cir. 2013); *accord Jimenez v. City of Chi.*, 732 F.3d 710, 721 (7th Cir. 2013).

Forest River attacks as improper legal opinions section 4 of Dr. Maronick's report in which he gives conclusions under certain likelihood of confusion factors developed in another circuit, and section 6 in which he analyzes seven factors that courts use to evaluate consumer surveys—what he calls the

3

"Diamond" factors [*see* 86-1 at 68-70 (Ex. 2 at 4-6); 86-1 at 75-78 (Ex. 2 at 11-14)].[1] In response, though, inTech explains that Dr. Maronick will not opine on the likelihood of confusion, which the court understands as a concession that this slate of opinions in section 4 (even as context) is no longer in dispute and will not be offered. The court addresses then only the opinions in section 6 of his report.

inTech says Dr. Maronick will offer only his critique of Dr. Franklyn's survey. In doing so, he need not trace for the jury the seven factors in the reference guide as something courts do, or tell the jury that judges often evaluate surveys using these factors. The court will instruct the jury as to how to weigh the evidence, how to decide the credibility of witnesses, and how to assess any expert opinions. The reference guide is not the law, and suggesting to the jury that it is would be not only improper under Rules 702 and 704 but also prejudicially confusing under Rule 403. The reference guide is intended for judges and perhaps counsel, but not juries. Accordingly, Dr. Maronick must confine his opinions to the analysis of Dr. Franklyn's survey; but, to the extent that these factors in evaluating surveys prove to be factors that experts in his field would utilize to develop or assess such surveys, consistent with his experience, he may articulate these factors as appropriate considerations. After all, it seems in material measure that any critiques in this section 6 appear in section 7 of his report already.

B.    *Reliability.*

Expert testimony must originate from reliable principles and methods. Fed. R. Evid. 702. Scientific testimony may be validated if the theory or technique can be or has been tested, if it has been subjected to peer review and publication, if it has a known or potential error rate, and if it enjoys general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593-94. These concerns may or may not bear on technical or experience-based opinions, appreciating that the analysis remains ever nimble to meet their substance, and so long as the witness "employs in the courtroom the same level of intellectual

---

[1] Dr. Maronick calls these the Diamond factors because Shari S. Diamond enumerated these factors in the *Reference Manual on Scientific Evidence* (2000), published by the Federal Judicial Center.

4

rigor that characterizes the practice of [the] expert in the relevant field." *Kumho Tire Co. v. Carmichal*, 526 U.S. 137, 152 (1999); *accord Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007).

Expert testimony also must be based on sufficient and known facts. *Daubert*, 509 U.S. at 590; Fed R. Evid. 703; *see, e.g., Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1176 (7th Cir. 2008) (evidence of one sale was an insufficient basis to calculate an average of sales over twenty years). This data set need not be "flaw-free." *Lees v. Carthage Coll.*, 714 F.3d 516, 525 (7th Cir. 2013) (quoting *United States v. Mikos*, 539 F.3d 706, 711 (7th Cir. 2008)). The court's gatekeeping role doesn't make it the trier of all facts that relate to an opinion witness's testimony. *Stollings*, 725 F.3d at 765; *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). A "valid and properly applied methodology" may leave conclusions open to "doubt"—that doubt that good trial lawyers explore in crossexamination and that the jury weighs and credits as it sees fit as the factfinder. *Stollings*, 725 F.3d at 766. "Our system relies on cross-examination to alert the jury to the difference between good data and speculation." *Schultz v. Akzo Nobel Paints*, 721 F.3d 426, 432 (7th Cir. 2013).

The court's analysis thus focuses on the methodology, not specific inputs. *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 807 (7th Cir. 2013). The "critical inquiry is whether there is a connection between the data employed and the opinion offered" and whether the expert employed the kinds of facts or data on which experts in the field would "reasonably rely." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) (emphasis removed); *see also* Fed. R. Evid. 703. "Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000). "[I]t's one thing to appreciate that a principle exists; it's quite another to do one's homework and apply the principle reliably to a case to enable an opinion in federal court and to guide a jury to answer the question in dispute." *Smith v. Nexus RVs*, 472 F. Supp.3d 470, 480 (N.D. Ind. 2020). "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). His say-so won't cut it. *See Kumho Tire*, 526 U.S. at 157.

Dr. Franklyn conducted a Squirt survey to determine whether consumers of towable travel trailers are likely to be confused by Forest River's Della Terra and inTech's Terra marks. After winnowing of a larger data set to past or future purchasers of towable recreational vehicles from dealers within the United States, respondents viewed images of travel trailers that differed depending on whether they had been randomly classified as a "test" or "control" subject. Respondents answered two "buffer" questions early to blind the study's purpose and then later answered whether the later images were made by, affiliated with, or sponsored by the company who made the first travel trailer—in this instance Forest River's Della Terra travel trailer. Dr. Franklyn opines that 11 percent of respondents displayed confusion—he says a significant percentage—and that a majority of these respondents formed this confusion based on the Terra mark or mountain design.

Forest River posits that Dr. Maronick should have conducted a rebuttal survey. An opinion witness often need not replicate data or develop new data to offer rebuttal opinions about the gaps in method or data that another Rule 702 witness employs. Under today's circumstances, and the commentary intended by Dr. Maronick, no additional survey was required. A rebuttal opinion witness may critique another's opinions "without offering alternatives," *1st Source Bank v. First Res. Fed. Credit Union*, 167 F.R.D. 61, 65 (N.D. Ind. 1996), so long as that aids the jury in deciding a triable issue, *see* Fed. R. Evid. 702; *see generally Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) (concerning proper function of rebuttal evidence). He cannot be a mouthpiece for the other expert's opinions—as occasionally even an opposing expert offers something important to the other side—but he may base his opinions on the other's information, and add to it his own, when the information is of the type that experts in his field reasonably rely. *Gopalratnam*, 877 F.3d at 789; *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *Ramsey v. CONRAIL*, 111 F. Supp.2d 1030, 1038 (N.D. Ind. 2000); *see*

*also* Fed. R. Evid. 703. In rebuttal, Dr. Maronick says Dr. Franklyn's survey has five flaws. Forest River views each of these five critiques as unreliable and derivative merely of his say-so.

First, Dr. Maronick opines that a survey should begin with the right sample, but he says the sample used by Dr. Franklyn (the entire United States population) was overbroad [86-1 at 77, 79-80 (Ex. 2 at 13, 15-16)]. He claims that Dr. Franklyn should have sampled individuals in the target market for travel trailers, noting that 75 percent of travel trailer purchasers exceed age 45 and have a disposable income above the national average. Dr. Franklyn reports that he took the U.S. population and set "rough quotas . . . in line with census distributions for age, gender, and region" [86-2 at 26]. Dr. Maronick provides in his report more details about how Dr. Franklyn winnowed the U.S. population to a suitable sample, but says he omitted asking respondents whether they intended to purchase a mid-sized travel trailer or a towable one requiring a high-performance truck [86-1 at 71 (Ex. 2 at 7)].

For his critique, Dr. Maronick offers more than just his say-so. He relies on a demographic profile study of RV owners conducted by Ipsos in 2020. Ipsos appears to be a near-50-year international company, publicly-traded in the European Union, with nearly 90 markets (including the United States), that collects and compiles data for its clients to make decisions.[2] Whether peer-reviewed or not, the court cannot say just on its face that this study would not be in some measure authoritative or sufficient. It may be that Dr. Maronick could be exposed in crossexamination for relying on an inappropriate data set to mount his criticism, particularly when he has little working knowledge of this study's development or data, but weaknesses in his data are for crossexamination. *See Manpower*, 732 F.3d at 807; *Stollings*, 725 F.3d at 765-66. His data need not be "flaw-free." *Lees*, 714 F.3d at 525.

Nothing demonstrates that this data would not be something reasonably relied upon by experts in his field—in fact he says it would be used—so the critical inquiry is whether he connects this data to his opinion, and he does so by saying Dr. Franklyn began with an overbroad ("not relevant") sample. *See*

---

[2] Ipsos also has affiliated with researchers at the University of Michigan and University of Chicago.

*Gopalratnam*, 877 F.3d at 781. Elsewhere in his opinions he explains the method for conducting a reliable survey, which includes defining the representative sample from the universe of potential respondents. Thus, aside from his credentials and experience, and the jury's need to understand such surveys (hence its fit), his opinion draws on some reputable data. His opinion may not fit so well as to explain to the jury how this different sample would change the ultimate conclusion of the survey—he seems not to offer that particular opinion in his report—but just because his opinion doesn't fit this inquiry for the jury doesn't mean it won't assist the jury to understand the importance of beginning with a proper sample. Forest River's concerns pertain to the weight of his opinion, not its admissibility.

Second, Dr. Maronick opines that Dr. Franklyn should have used a broader array of images of competing trademarks rather than just a single control image (inTech Sol) and buffer image (Jayco Eagle), for using just these two images magnified the likelihood of finding an association between Forest River's mark and inTech's mark [86-1 at 78, 80-81 (Ex. 2 at 14, 16-17)]. Dr. Franklyn used a two-room format where the respondents were first shown the Forest River Della Terra model in room one, and then were shown two other images in room two, either the inTech Terra travel trailer (test group) or the Sol RV (control group). Both groups also saw in room two a buffer image (the Jayco Eagle). Dr. Maronick notes that these sequential images were shown one at a time rather than in an array. He cites two industry articles that recommend showing respondents an array of competitive products and more than just two, else closed-ended questions thereafter can skew responses substantially higher.[3]

Forest River argues that these opinions are unmoored to any data or methodology because Dr. Maronick never performed his own survey and thus constitute merely his say-so. Not so—because, aside from his credentials and the educative use of this opinion for the jury to understand this survey and to assign it weight, he cites sufficient data and once more draws from all this his conclusion that the results

---

[3] *See* Deborah Jay, *He Who Steals My Good Name: Likelihood of Confusion Surveys in TTAB Proceedings* 1147, The Trademark Reporter (2014); Jerry B. Swann, *Likelihood of Confusion Studies and the Straitened Scope of Squirt* 749, The Trademark Reporter (2008).

8

of the survey have been skewed. In doing so, he ties this data to the method built on what commonly appear to be factors in evaluating surveys. Forest River may not like that method, and it may not like this data or its commentary on the survey that Dr. Franklyn performed, and Dr. Franklyn may have a sound retort to this critique, but these are the exercises of crossexamination and argument at trial, not questions of admissibility under Rule 702. As before, he may rely on reliable other sources and even hearsay to offer his opinions. *See United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (expert testimony "need not be based on first-hand knowledge of the facts of the case").

Third, Dr. Maronick opines that Dr. Franklyn's use of the inTech Sol RV as the control image was so different from the Terra unit that it created a "cue" to respondents that the Della Terra and Terra and were associated [86-1 at 78-79, 81-82 (Ex. 2 at 14-15, 17-18)]. He cites as a standard in the method of conducting surveys that a control should share as many characteristics with the experimental stimulus as possible, except for the characteristic that the survey wants to assess. He cites a survey authority and an industry authority for this step in his method. More than this, he specifies in reviewing the images the differences (size and configuration) that he believes skew the results. His experience in developing and conducting such surveys, bolstered by these industry sources, provides him the reliable capability to do so. In returning to the factors that guide his method of analysis, he has marshaled sufficient facts and reliably applied this method in fashioning a critique of the survey. Whether the jury will find it credible, well that's for the jury, but Forest River's concerns are for crossexamination and argument.

Fourth, Dr. Maronick opines that the use of two "irrelevant" questions between the respondents' viewing of the Della Terra image and the images of the Terra, Sol, and Jayco units caused the respondents to "guess" [86-1 at 73, 79, 82-83 (Ex. 2 at 9, 15, 18-19)]. He calls the intervening questions a modification to the Squirt survey format, and once again offers more than his say-so by pointing to industry support for his opinion, a factual basis found within Dr. Franklyn's survey method, a factual basis within the questions and responses, and the not-illogical concern that this method cued particular responses. His

method includes as a check-and-balance that survey questions be framed clearly and precisely to avoid bias and to use control questions when appropriate, so his experience and facts speak not just to his method but to an issue the jury might reasonably engage to evaluate the weight to give this survey. Forest River's concerns, in light of this, once more concern the weight of Dr. Maronick's critique.

Fifth, Dr. Maronick disagrees with Dr. Franklyn that a 9 percent net difference of survey respondents finding confusion between the Della Terra and Terra represents a significant likelihood of confusion [86-1 at 74-75, 84 (Ex. 2 at 10-11, 20)]. Of course, the two proposed Rule 702 witnesses compete on this point. In fairness, Dr. Maronick rather embarrassingly cannot recall whether he drew his critique from the entirety of Dr. Franklyn's analysis as opposed to a particular section [86-1 Tr.50-54], but on this record that once more goes to a factual gap in his analysis suitable for crossexamination, not outright exclusion. Dr. Maronick offers a formula for testing statistical significance. He never provides the outcome of this formula in his report, but he provides a basis and method for testing his conclusion—it is testable. Notably, he was never asked in deposition whether he actually ran the formula or the results of doing so [*id.* Tr.53]. Built on a method for adjudging surveys, built further on a formula for adjudging statistical significance, built further on data from Dr. Franklyn's survey (even if a subset), and built on his experience in conducting 300 surveys, then all aimed to assist the jury to understand not just the survey but what it might tell a factfinder, the court cannot say his opinion here is inadmissible under *Daubert*.

## CONCLUSION

Accordingly, the court GRANTS Forest River's motion to exclude Dr. Maronick as it concerns his conceded opinions and those in section 4 of his report, expecting the parties to hew to their agreement, and DENIES the motion as to his critique of Dr. Franklyn's survey, principally his five flaws and conclusion from the survey [85].

SO ORDERED.

October 20, 2023               *s/ Damon R. Leichty*
                                Judge, United States District Court